UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LOUISIANA OIL & GAS INTERESTS, LLC** | **:** | **CIVIL ACTION NO. 18-cv-266** |
| **VERSUS** | **:** | **JUDGE SUMMERHAYS** |
| **SHELL TRADING (U.S.) CO., ET AL.** | **:** | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a motion to dismiss filed by defendant Gulfport Energy Corporation (hereafter "Gulfport"). Doc. 32. Also before the court is a motion to dismiss filed by defendant Shell Trading (U.S.) Company (hereafter "Shell"). Doc. 33. Both motions are filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Docs. 32, 33. Plaintiff Louisiana Oil & Gas Interests, LLC opposes both motions. Docs. 38, 39.

The matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the reasons stated below, **IT IS RECOMMENDED** that the Motion to Dismiss filed by Gulfport be **GRANTED**, the Motion to Dismiss filed by Shell be **GRANTED**, and that all claims be **DISMISSED WITH PREJUDICE.**

I.
FACTS AND PROCEDURAL HISTORY

This case arises from royalty payments owed under a mineral lease that plaintiff asserts were not paid within the time periods required under the Louisiana Mineral Code, La. R.S. § 31:1, *et seq.* Doc. 31, pp. 6–7. Under this mineral lease, royalties accrued by the interest holder are remitted partially by Gulfport, and partially by Shell on Gulfport's behalf. Doc. 31, att. 8. On

April 28, 2008, Thomas Barr IV Louisiana Properties-General Limited Liability Company (hereafter "Properties-General") acquired an interest in this lease, and on December 23, 2013, that interest was transferred to Louisiana Oil & Gas Interests, LLC (hereafter "plaintiff") [1]. Doc. 31, att. 4.

On January 17, 2014, plaintiff sent a letter to Shell requesting that future royalty checks be made payable to it rather than to Properties-General (hereafter "Payee Change Request"). *Id.* at att. 1. Four days later plaintiff received an email from Shell detailing the requirements for changing a payee; these requirements included, providing Shell with a copy of the document transferring the interest and furnishing proof of its filing in the parish conveyance records. *Id.* at att. 2. Shell sent a second email on March 10, 2015, again explaining what information was required to change the payee. *Id.* at att. 3. On April 21, 2015 [*id.* at att. 6, p. 2], plaintiff faxed to Shell a certified copy of the transfer document filed into the conveyance records of Cameron Parish. *Id.* at att. 4. This transfer document bears a seal that shows it was filed February 21, 2014. *Id.*

During the time that plaintiff corresponded with Shell regarding the proper payee, Shell continued to issue royalty checks made payable to Properties-General. *See* Doc. 31, p. 4. According to plaintiff, its original bank allowed it to deposit the checks but, after changing banks, it was no longer able to do so. *Id.* On April 23, 2015, plaintiff returned two checks[2] to Shell and requested that they be reissued as payable to "Louisiana Oil & Gas Interests, LLC" (hereafter "Reissuance of Check Request"). *Id.* at att. 5. On June 1, 2015, the manual replacement check in the amount of $99,755.83 was sent to plaintiff by Shell. Doc. 31, p. 5. On September 1, 2015

---

[1] Thomas Barr, IV is the sole member and manager of both limited liability companies. Doc. 31, p.1; doc. 31, att. 4.
[2] Check no. 0000289629 was dated 3/19/2015 and in the amount of $54,410.35. Doc. 31, att. 5. Check no. 0000295338 was dated 4/19/2015 and in the amount of $45,345.48. *Id.* The checks were issued for the royalties owed in February and March 2015, respectively. *See* doc. 31, att. 6.

plaintiff sent a "demand letter" to Shell. *Id.* at att. 7. In the letter plaintiff demanded "damages pursuant to La RS 31: 140." *Id.* at 2.

Shell responded to plaintiff's demand via certified letter on September 25, 2015, explaining its position that the royalty checks for February, March, and April 2015[3] were timely issued. *Id.* at att. 6. It stated that the February and March checks were originally made payable to Properties-General because it was the proper payee at those times insofar as Shell had not receive the recorded transfer agreement until April 21, 2015. *Id.* It further noted that the April check was sent as payable to Louisiana Oil & Gas Interests, LLC, and that it had since reissued the February and March payments in a single check made payable to the same. *Id.* According to Shell's records, plaintiff cashed the replacement check for the February and March 2015 production periods, as well as the original check for the April 2015 cycle, on July 29, 2015. *Id.*

On March 2, 2018, plaintiff filed suit in this court naming Shell and Gulfport as defendants. Doc. 1. It asserts that defendants failed to make all three payments within the period required under the penalty provisions of the Louisiana Mineral Code, La. R.S. §§ 31:138–141. *See* Doc. 31, p. 6. Thus, plaintiff seeks to recover double the amount of the allegedly late royalties, in addition to attorney's fees, interest, and costs. *Id.* at p. 7.

On September 14, 2018, Gulfport and Shell filed the instant motions. Docs. 32, 33. Both defendants assert that plaintiff did not provide either defendant with the required written demand for royalty payments prior to filing suit. Doc. 32, att. 1, pp. 11-15; Doc. 33, att. 1, pp. 13-17. Alternatively, Gulfport asserts if the written demand was provided to Shell, that does not constitute notice to Gulfport. Doc. 32, att. 1, pp. 11-13. Plaintiff opposes both motions. Docs. 38, 39. It

---

[3] Although plaintiff and Shell refer to this payment as being for the May 2015 payment cycle [doc. 31, p. 4, ¶ 24; doc. 31, att. 6, p. 1], the timeline of events shows that this payment was for the April production period. Doc. 31, att. 6, p. 3.

asserts that communications made between it and Shell are sufficient to satisfy the demand requirement [doc. 38, att. 1, pp. 18-22; doc. 39, att. 1, pp. 16-24] and that a demand made to Shell constitutes a notice to Gulfport. Doc. 38, att. 1, pp. 11-17.

## II.
## LAW & APPLICATION

### A. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus exclusively on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir.2012). Such motions are also reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir.2007) (citing *Walker v. S. Cent. Bell Tel. Co.*, 904 F.2d 275, 276 (5th Cir.1990)).

The court's task in evaluating a motion to dismiss under Rule 12(b)(6) is "not to evaluate the plaintiff's likelihood of success," but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). However, "[w]hile the district court must accept as true all factual allegations in the complaint, it need not resolve unclear questions of law in favor of the plaintiff." *Kansa Reinsurance Co., Ltd. v. Congressional Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir.1994) (citations omitted).

### B. Review of Claims

Plaintiff seeks damages under the penalty provisions of the Louisiana Mineral Code, La. R.S. §§ 31:138–141. Doc. 31, pp. 6-7. As a prerequisite for this claim, the Louisiana Mineral Code requires that a lessor provide the lessee with a written demand for royalty payments

(hereafter "Article 137 Notice"), and that nonpayment continue for thirty days after receipt of the demand. *See Chevron USA, Inc. v. Vermillion Parish School Bd.*, 337 F.3d 459, 462 (5th Cir.2004) ("Article 137 requires a mineral lessor to give his lessee written notice of his claim of failure to make timely or proper payment of royalties as a prerequisite to a judicial demand, i.e. filing suit seeking relieve.") (citing La. R.S. § 31:137)).

As discussed *supra*, the complaint chronicles the communications sent to the defendants regarding the royalty payments at issue in this case. Defendants argue that none of these communications were a legally sufficient Article 137 Notice. Doc. 32, att. 1, pp. 11-15; doc. 33, att. 1, pp. 13-17. Article 137 provides:

> If a mineral lessor seeks relief for failure of his lessee to make timely or proper payments of royalties, he must give his lessee written notice **of such a failure** as prerequisite to a judicial demand for damages or dissolution of the lease.

La. R.S. § 31:137 (emphasis added). From a plain reading, it is clear the article contemplates the lessor notifying the lessee of *past* failures to make timely or proper payments, rather than the lessor notifying the lessee *prospectively* that payments should be made to a new payee. As stated in The Official Comments to La. R.S. § 31:137, Article 137 Notice serves "to inform the lessee that he *has not paid royalties* deemed by the lessor to be *due*." (emphasis added).

The only formal requirement for this notice is that it be written.[4] However, courts have been hesitant to endorse demands that could lead a recipient to reasonably misinterpret the import

---

[4] *See River v. Sun Exploration and Production Co.*, 559 So.2d 963, 969 (La. App. 2 Cir. 1990) ("The Mineral Code contains no specific guidelines as to the precise requirements of the formal written demand set forth in La. R.S. § 31:137 but instead only generally requires the lessor 'give his lessee written notice of such failure' to make timely and proper payment of royalties.") (citing La RS § 31:137)); *see also Lewis v. Texaco Exploration and Production Co., Inc.*, 698 So.2d 1001, 1010 (La. App. 1 Cir. 1997) (concurring with *River* and noting, "the jurisprudence [has not] established any specific requirements for the sufficiency of [Article 137] notice.").

of a communication. *See, e.g. Ross v. Enervest Operating, LLC*, 119 So.3d 943, 960 (La. App. 2 Cir.2013) (finding a letter too ambiguous to meet the demand requirements of article 137).

Plaintiff asserts that the Payee Change Request constituted sufficient notice under Article 137 and that the request "notified the Defendants that they had not paid royalties deemed by the lessor to be due." Doc. 38, att. 1, p. 21. Examining the letter, we disagree with both assertions. The Payee Change Request states in part,

> Please be advised that, effective January 1, 2014, the Lease interests of Thomas Barr IV Louisiana Properties—General Limited Liability Company in the above referenced Leases, have been assigned to Louisiana Oil & Gas Interests, LLC.
>
> Accordingly, effective immediately, please remit all royalty and lease payments pursuant to said Lease Agreements, as follows: . . . A copy of the Transfer and Assignment Agreement is enclosed for your records. Should you require additional information, please contact me immediately.

Doc. 31, att. 1. This letter did not inform Shell of any past failure to make timely or proper payments, rather it notified Shell prospectively that payments should start going to a new payee. Furthermore, the letter did not provide the defendants with a meaningful opportunity to correct the problem with the payment, the "obvious purpose" of Article 137. *Rivers*, 559 So.2d at 969. Accordingly, we find the Payee Change Request is not sufficient Article 137 Notice.

Plaintiff also asserts that the Reissuance of Check Request sent April 23, 2015, constituted sufficient notice under Article 137. *See* Doc. 31, p. 4. This letter states in part,

> Enclosed please find the following checks returned to Shell Trading for reissuance in the new name Louisiana Oil & Gas Interests, LLC, as is evidenced by the Transfer and Assignment faxed to you. . . . Thank you for your assistance in the re-issuance of these checks as soon as possible.

Doc. 31, att. 5. As Gulfport points out, a letter formally requesting royalty payments be paid to a new owner does not notify recipients of any past due royalty payments and it does not satisfy the demand requirements of Article 137. Doc. 32, att. 1, p. 15 (citing *Ross,* 119 So.3d at 960).

Likewise, a letter notifying Shell of the change in payee name and the name to reissue checks does not give rise to a reasonable inference that any deficiency in payment has occurred. Accordingly, we find the Reissuance of Checks Request is not sufficient Article 137 Notice.

Plaintiff did not provide either defendant with the statutorily required notice thirty days prior to the receipt of its royalty payments. This bars recovery under the penalty provisions of the Louisiana Mineral Code. Accordingly, we recommend the case be dismissed.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Dismiss filed by Gulfport be **GRANTED**, the Motion to Dismiss filed by Shell be **GRANTED**, and that all claims be **DISMISSED WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir.1996).

THUS DONE AND SIGNED in Chambers this 26th day of February, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE